

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**ENTERED**
**11/30/2007**

| | | |
|---|---|---|
| IN RE: | § | |
| IFS FINANCIAL CORPORATION | § | CASE NO: 02-39553 |
|     Debtor | § | |
| | § | CHAPTER -7 |
| | § | |
| W. STEVE SMITH, TRUSTEE, *et al* | § | |
|     Plaintiff | § | |
| | § | |
| VS. | § | ADVERSARY NO. 04-03777 |
| | § | |
| LUIS MENDEZ JIMENEZ, *et al* | § | |
|     Defendant | § | |

### <u>Memorandum Opinion</u>

Defendants in this adversary proceeding seek dismissal of one defendant and judgment on the pleadings with respect to a claim. The Court:

- denies defendants' motion for judgment on the pleadings.

- denies in part defendants' motion to dismiss Jiluime.

- dismisses the Trustee's fraudulent transfer claim against Jiluime.

### Background

The IFS Financial Corporation ("IFS") case is a jointly administered case comprised of 19 related entities (the "Interamericas Companies").[1] Under the jointly administered case, W. Steve Smith, Trustee, has filed over 100 adversary proceedings. The Trustee filed the present adversary proceeding on October 10, 2004. The Trustee's third First Amended Complaint names the following defendants: Luis Mendez Jimenez, Jiluime, S.A. DE C.V., Evangelina

---

[1] An involuntary petition was filed against each of these entities on August 23, 2002. The Court entered an order on January 3, 2005, jointly administering these cases under a single docket. The relationship between these various entities is complex. The Trustee sets forth an overview of the alleged "Interamericas Corporate Structure" in his third First Amended Complaint [docket no. 97].

1

Mendez Jimenez Izquierdo, Luis Mendez Jimenez Izquierdo, Andrea Mendez Jimenez Izquierdo, Alvaro Mendez Jimenez Izquierdo, Abastacedora Lumen, S.A. de C.V., and Polidex, S.A. de C.V.

The Interamericas Companies took in money, primarily from Mexican investors, in exchange for future payments to be made from the operation of Interamericas Companies' various businesses.[2] Between 1998 and 2002, millions of dollars were transferred out of the Interamericas Companies to various alleged insiders. Most of the transfers occurred through "sham" loans made by Interamericas Companies' entities to the insiders. In this adversary proceeding, the Trustee seeks recovery of loan proceeds from an insider family and their businesses.

In September of 1998, Luis Mendez Jimenez ("Mendez") received an approximately $4.8 million loan (the "Select Asset Loan") from American Founders Life Insurance Company ("AFL"), an Interamericas Companies entity. In September of 1999, Mendez renewed the Select Asset Loan. To secure the renewed Select Asset Loan, Mendez's children, Evangelina, Luis, Andrea, and Alvaro Jimenez Izquierdo (the "Mendez Children") pledged 100% of the stock of Jiluime, S.A. DE C.V. ("Jiluime"). Jiluime is a Mexican corporation whose sole asset appears to be a commercial office building. Jiluime is wholly owned by the Mendez Children.

The Trustee alleges that the Interamericas Companies made all payments (approximately $4.6 million) on the Select Asset Loan. There is no evidence that Mendez, the Mendez Children, or Jiluime made any payments on the Select Asset Loan. Presently, Mendez and the Mendez Children appear to owe no obligations on the Select Asset Loan. AFL released the Jiluime stock pledges to Mendez.

---

[2] The Interamericas Companies' businesses included the mortgage, banking, insurance, real estate, custom brokerage and transport forwarding, money exchange, construction/development, and food industries.

In 1995, Interamericas Companies insiders began borrowing money from Woodforest National Bank ("Woodforest") through corporations owned by the insiders or established by the Interamericas Companies for the insiders' behalf (the "CTI Loans"). INV Capital Limited ("INV"), an Interamericas Company entity, purchased a 95% participation interest in the CTI Loans and pledged CDs to secure Woodforest's 5% participation interest.

Abastacedora Lumen, S.A. de C.V. ("Abastacedora"), and Polidex, S.A. de C.V. ("Polidex") were among the entities that borrowed from Woodforest. Abastacedora and Polidex are Mexican companies wholly or majority-owned by Mendez and the Mendez Children. As of 2001, Abastacedora and Polidex had obtained approximately $4.7 million in loans (the "Abastacedora and Polidex Notes"). There is no evidence Abastacedora or Polidex ever made a payment on the CTI Loans. Yet Abastacedora and Polidex have produced letters from Woodforest suggesting that the Abastacedora and Polidex Notes have been paid in full.

The Trustee seeks to recover from Mendez, the Mendez Children, Jiluime, Abastacedora, and Polidex (the "Mendez Defendants") the amounts paid by the Interamericas Companies on the Select Asset and CTI Loans.[3]

On April 4, 2007, the Trustee filed his first Amended Motion for Leave to Drop and Add Defendants, Consolidate Adversary Proceeding, and File First Amended Complaint ("Amended Complaint"). The Mendez Defendants objected to certain amendments. On July 27, 2007, the Trustee filed his second Amended Complaint. The Mendez Defendants again objected. On August 27, 2007, the Court held a hearing on the Trustee's motion. The Court noted deficiencies in the pleadings but gave the Trustee an opportunity to re-plead. On September 5, 2007, the Trustee filed his third First Amended Complaint. On September 19, 2007, counsel for the

---

[3] The Trustee's third First Amended Complaint seeks recovery under six cause of action: unjust enrichment, fraud, breach of fiduciary duty, conspiracy to commit fraud, conspiracy to commit breach of fiduciary duty, and fraudulent transfer [docket no. 97].

Mendez Defendants filed two motions: a motion to dismiss one defendant (Jiluime) from the adversary proceeding, and a motion for judgment on the pleadings in favor of all Mendez Defendants on the Trustee's unjust enrichment claims based on the CTI Loans.

## Jurisdiction and Venue

This Court has jurisdiction of this matter under 28 U.S.C. § 1334. Venue is proper in this District pursuant to 28 U.S.C. §1409.

## Analysis

**A. Motion To Dismiss Jiluime.**

The Mendez Defendants seek dismissal of Jiluime based on the Trustee's failure to properly plead any viable claims against Jiluime. The Trustee's initial First Amended Complaint asserted fives causes of action against the Mendez Defendants: unjust enrichment, fraud, conspiracy to commit fraud, breach of fiduciary duty, and fraudulent transfer. The Mendez Defendants objected to claims asserted against Jiluime. Prior to the August 27 hearing, the Trustee agreed to drop the fiduciary duty claim against Jiluime. At the August 27 hearing, the Court held that the unjust enrichment claim against Jiluime was futile. Consequently, only the Trustee's fraud, conpsirary to commit fraud, and fraudulent transfer claims remain pending against Jiluime.

At the August 27 hearing, the Court held that fraud was not pled with sufficient particularity. However, the Court gave the Trustee an opportunity to amend his complaint. The Trustee's third First Amended Complaint properly pleads fraud against Jiluime.

Rule 9(b) requires the circumstances constituting fraud to be plead with "particularity." Federal Rules of Civil Procedure Rule 9(b); Federal Rules of Bankruptcy Rule 7009. Under Rule 9's particularity requirement, the party asserting the fraud claim must allege "the existence of

4

facts and circumstances sufficient to warrant the pleaded conclusion that fraud ha[s] occurred." *In re Haber Oil Co.*, 12 F.3d 426, 439 (5th Cir. 1994) (*citing In re Kelton Motors Inc*, 121 B.R. 166, 187 (Bankr. D. Vt. 1990)). "The allegations should allege the nature of the fraud, some details, a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants." *Haber Oil,* 12 F.3d at 439 (citing *Askanase v. Fatjo,* 148 F.R.D. 570, 574 (S.D. Tex. 1993)); *See also, Plotkin v. IP Axess Inc.,* 407 F.3d 690, 696 ("the Rule 9(b) standards require specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent"), *U.S. ex rel. Williams v. Bell Helicopter Textron Inc.,* 417 F.3d 450, 453 (5th Cir. 2005) ("At a minimum, [Rule 9] requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud."). Furthermore, "[b]ankruptcy courts should and do insist that the stringent standard imposed by Bankruptcy Rule 7009 be observed by parties claiming fraud . . . ." *Haber Oil,* 12 F.3d at 439 (citing *Kelton Motors*, 121 B.R. at 187). The defendant's state of mind, however, may be generally averred. *E.g., Collmer v. U.S. Liquids, Inc.*, 268 F. Supp. 2d 718, 723 (S.D. Tex. 2003).

The Trustee's third Amended Complaint has adequately plead the who, what, when, where, and how of the fraudulent scheme in which Jiluime allegedly participated. The Trustee describes the participants in the alleged fraudulent scheme: the Mendez Defendants and other Interamericas Companies insiders. The Trustee describes when the fraudulent scheme occurred: February of 1999 through March of 2001. Moreover, the Trustee not only generally describes the scheme's occurrence, but also includes specific dates when specific acts within the fraudulent scheme occurred. The Trustee describes where the fraudulent scheme occurred: Mexico. The Trustee describes why the fraudulent scheme was carried out: to denude the Interamericas

Companies.

The Trustee also describes how the fraudulent scheme was allegedly carried out: Jiluime conspired with Mendez, the Mendez Children, and Interamericas Companies insiders to denude the Interamericas Companies' assets through "sham" loans. Jiluime allegedly helped Mendez obtain loans by assisting Mendez, the Mendez Children, and Interamericas Companies insiders structure the loan so that it would be approved by the Insurance Commission. Specifically, the Trustee alleges that Jiluime's conduct within the fraudulent scheme consisted of the following: In 1999, Interamericas Companies insiders decided to sell AFL to American Founders Financial Corporation (AFFC). Prior to 1999, Mendez's Select Asset Loan was not secured. To ensure that the Insurance Commission approved the sale, AFL's loans, including Mendez's Select Asset Loan, needed to be collateralized. Consequently, Mendez renewed the Select Asset Loan and the Mendez Children pledged 100% of Jiluime's stock to secure the loan. Jiluime's only asset is a commercial office building. The Select Asset Loan needed to be secured by the Mendez Children's stock pledge rather than a direct lien on the office building because of Mexican law. Under Mexican law, a non-Mexican lender can not directly obtain a lien on real property in Mexico. To gain an interest in the real property, the lender must obtain a lien on the company's stock. Upon default, the lender can foreclose on the stock. After foreclosing on the stock, the lender can then obtain the real property.

Jiluime admits that the "amendments would likely be sufficient to plead fraud with specificity as to Jiluime . . ." Reply of Jiluime, S.A. de C.V. to Trustee's Response to Motion of Jiluime, S.A. de C.V. to Dismiss, p. 4 (docket no. 111). Nevertheless Jiluime contends that fraud is not pled with particularity because the fraud theory is based on averments deemed futile by the Court at the August 27 hearing.

At the August 27 hearing, the Trustee defended his unjust enrichment complaint against Jiluime based on two averments. First, the Trustee averred that Mendez and the Mendez Children needed to pledge Jiluime stock rather than Jiluime directly pledging its assets because Mexican law precluded non-Mexican entities from obtaining liens on Mexican real property (the "Mexican Law Averment"). Second, the trustee averred that Jiluime received unjust enrichment through the Select Asset Loan paid to Mendez (the "Select Asset Loan Averment").

The Court held that the Trustee could not assert an unjust enrichment claim against Jiluime based on either averment. However, the Court did not state that the Mexican Law Averment or the Select Asset Loan Averment could not support a fraud or conspiracy to commit fraud claim. The Court's holding with respect to the averments was limited solely to the unjust enrichment claim against Jiluime.

Jiluime also contends that fraud is not sufficiently plead because the who, when, why, or how of the appraisal is not plead. However, the fraud count is not based on the appraisal alone. The appraisal was only one piece of the alleged fraudulent scheme orchestrated by Interamericas Companies insiders. As discussed above, the Trustee has pled the fraudulent scheme and Jiluime's participation in the scheme with sufficient particularity.

The Court denies Jiluime's motion to dismiss.[4]

## B. Motion for Judgment on the Pleadings

The Mendez Defendants seek judgment on the pleadings with respect to the Trustee's unjust enrichment claim based on the CTI Loans.

---

[4] The Trustee also asserts a fraudulent transfer claim against Jiluime. Trustee's First Amended Complaint, p. 27 (docket no. 97). Jiluime contends that this claim should be dismissed with respect to Jiluime because it is based on Mendez's Select Asset Loan. Reply of Jiluime, S.A. de C.V. to Trustee's Response to Motion of Jiluime, S.A. de C.V. to Dismiss, p. 3 (docket no. 111). The Court dismisses the fraudulent transfer claim with respect to Jiluime for the same reasons the Court deemed the unjust enrichment claim against Jiluime futile. Mendez, not Jiluime, received the transfer. The Select Asset Loan was executed by Mendez, not Jiluime. Nor was Jiluime liable on the loan.

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Federal Rule of Bankruptcy Procedure 7012 incorporates Rule 12(c) within bankruptcy court adversary proceedings.

Rule 12(c) motions are "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990). "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000). Courts must construe pleadings liberally and accept well-pleaded facts as true. *Greats Plains*, 313 F.3d at 312. "[J]udgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Id.* (quoting *Hughes*, 278 F.3d at 420. "The [district] court may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.* (quoting *Jones v. Geninger*, 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* at 313 (quoting *Jones*, 188 F.3d at 324).[5]

The Trustee asserts that the Mendez Defendants were unjustly enriched by the

---

[5] Rule 12(c) motions are decided under the same standards as Rule 12(b)(6) motions. *Great Plains*, 313 F.3d at 313 n. 8.

8

Abastacedora and Polidex Notes and Woodforest's release of payment obligations on the notes. The Mendez Defendants assert that the claim is precluded by the statute of limitations and by a settlement agreement executed by the Trustee and Woodforest. The Trustee admits that the statute of limitations has passed on the Abastacedora and Polidex Notes. However, the Trustee contends that the settlement agreement only precludes him from attempting to collect based on obligations created by the notes. In the present adversary proceeding, the Trustee contends that he seeks collection based on the Mendez Defendants' fraudulent conduct, not rights or obligations arising from the notes.

### *i. The Settlement Agreement.*

On October 12, 1994, the Trustee filed an adversary proceeding against Woodforest. The Trustee alleged that Woodforest received fraudulent transfers and participated in the defrauding and denuding of the Interamericas Companies through its lax banking practices, including failing to properly service the CTI Loans. On July 9, 2007, the Court approved a settlement agreement between the Trustee and Woodforest. The agreement provided for the release of the estate's clams against Woodforest for $5,000,000.[6] The agreement also contained an indemnity provision stating:

> "**4. Release, Indemnity and Consideration:** In consideration of the mutual promises and covenants set forth above and the monies paid or to be paid, the receipt and sufficiency of which is hereby acknowledged, *Trustee does release, discharge and forever hold WNB [Woodforest National Bank] harmless* from any and all liability, claims, demands, suits, actions and causes of action of every kind and character, and judgments, along with any and all other related matters in

---

[6] Specifically, the Settlement Agreement provided:
> "3. Cash Payments: WNB [Woodforest National Bank] shall pay the total sum of Five Million Dollars and 00/Cents ($5,000,000) to Trustee which shall satisfy any and all claims asserted or assertable by Trustee against WNB for any and all liability, claims, demands, suits, actions and causes of action of every kind and character, and judgments, along with any and all other related matters in controversy in fact or at law existing between them, known or unknown, whether in contract, in tort or pursuant to statute, fixed or contingent, liquidated or unliquidated, and whether or not asserted as of this date/pled or unpled, arising from or related to the events and transactions which are the subject matter of the Main Bankruptcy Proceedings and Adversary Proceeding 04-03841."

9

> controversy in fact or at law existing between them, known or unknown, whether in contract, in tort or pursuant to statute, fixed or contingent, liquidated or unliquidated, whether or not asserted as of this date/pled or unpled, and asserted or assertable by Trusteee, arising from or related to the events and transactions which are the subject matter of the Main Bankrupcty Proceedings and Adversary Proceeding 04-03841. ***In further consideration Trustee specifically agrees not to pursue any collection efforts on any of the notes between WNB and third parties*** in which any of the Debtors purchased, assert or have asserted any participation, ownership or other interest regardless of whether any such notes are in either English and/or Spanish (i.e., the CTI Notes). The parties agreed that the CTI Notes are the subject matter of the Main Bankruptcy Proceedings an Adversary Proceeding 04-03841." (emphasis added).

The Defendants assert that the Trustee waived the right to bring claims based on the CTI Loans, including the Abastacedora and Polidex Notes, through the release provision providing: " . . . Trustee specifically agrees not to pursue any collection efforts on any of the notes between WNB and third parties . . ."

The Settlement Agreement does not preclude the Trustee from pursuing his unjust enrichment claims. The Trustee's unjust enrichment claim is not based on the Notes. The Trustee's unjust enrichment claim is based on the Mendez Defendants' alleged fraudulent and unlawful conduct.. The CTI Notes did serve as the vehicle through which the Mendez Defendants were allegedly enriched. However, the vehicle is irrelevant to the elements the Trustee must prove to successfully pursue his unjust enrichment cause of action. The Trustee's cause of action is not based on rights or obligations arising from the Notes. The Trustee's cause of action is based on the Defendants' alleged conduct that, if proven, renders the Mendez Defendant's financial benefits from the Notes unjust.

For the same reasoning, the Court rejects the Mendez Defendants' contention that the Trustee is barred from pursuing an unjust enrichment claim based on the release of obligations on the Abastacedora and Polidex Notes that Woodforest allegedly gave the Mendez Defendants. The Mendez Defendants asserted that the unjust enrichment claim based on the release is also an

attempt to collect on the Notes. As noted above, the unjust enrichment claim is not based on rights or obligations created by the Notes. The unjust enrichment claim is based on the alleged fraudulent conduct that would render the Mendez Defendant's receipt of the release unjust.

The Mendez Defendants additionally contend that the Trustee's unjust enrichment claim should be dismissed because the Trustee has tardily altered his unjust enrichment theory. In the Trustee's response to the Mendez Defendants' motion for judgment on the pleadings, the Trustee asserts that the unjust enrichment claim arises from fraudulent conduct. The Mendez Defendants contend that the Trustee did not assert a fraud-based unjust enrichment theory within any of the Trustee's three First Amended Complaints.

The Mendez Defendants' argument is without merit. The Trustee's three First Amended Complaints all plead a fraud-based unjust enrichment theory. The Trustee's complaints never asserted an unjust enrichment claim based on rights or obligations arising from the Abastacedora and Polidex Notes. In the Amended Compalints, the Trustee grouped his unjust enrichment, fraud, conspiracy to commit fraud, and breach of fiduciary duty causes of actions under one heading. Following the heading, the Trustee pleads an alleged fraudulent scheme that forms the basis of each cause of action, including unjust enrichment.

Finally, the Mendez Defendants assert that the Trustee's unjust enrichment claim is an impermissible attempt to get around the statute of limitations bar. The Defendants assert that a party can not get around a barred contract claim by asserting an unjust enrichment claim. The Defendant cites two Texas state court cases to support their position. *River Street Development v. Mathias*, 1996 WL 348175 (Tex. App.—Dallas June 20, 1996, no pet.); *Collins v. Allied Pharmacy, Inc.*, 871 S.W.2d 929 (Tex. App.—Houston [14 Dist.] 1994, no pet.).

*River Street* and *Collins* are inapplicable to this case. *River Street* and *Collins* hold that

11

plaintiffs can not use a tort theory to recover a contract claim precluded by the statute of frauds. 1996 WL 34871 at *4; *Collins*, 871 S.W.2d at 936.  The statute of frauds is not implicated in this case.  The statute of frauds requires a promise or agreement "which is not to be performed within one year from the date of making the agreement" to be in writing and "signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him." TEX. BUS. & COM. CODE § 26.01 (West 2006).  No one contends that the Trustee is seeking to recover an obligation arising from an oral promise invalidated by the statute of frauds.  Moreover, the Trustee is not seeking to recover based on a written or oral contract at all.  The Trustee seeks recovery based on fraudulent conduct.  Contracts may be involved in the claim. The Abastacedora and Polidex Notes are not irrelevant to the Trustee's claim.  However, the Notes are only *evidence* of the alleged fraud and the amount of unjust enrichment.

The Trustee's claim for unjust enrichment is sufficient to withstand summary dismissal. "A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Unjust enrichment "characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances that give rise to an implied or quasi-contractual obligation to repay." *Argyle Indep. School Dist. v. Wolfe*, 2007 WL 2285472 at *12 (Tex. App.—Fort Worth August 9, 2007, no pet. h.) (quoting *Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 900 (Tex. App.—Dallas 2006, no pet.). "Unjust enrichment 'applies the principles of restitution to disputes which for one reason or another are not governed by a contract between the contending parties." *Best Buy Co., Inc. v. Barrera*, 214 S.W.3d 66, 73 (Tex. App.—Corpus Christi, 2006, pet. filed) (quoting *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso, 1997, no pet.). "When a

defendant has been unjustly enriched by the receipt of benefits in a manner not governed by contract, such as circumstances involving fraud, duress, or the taking of an undue advantage, the law implies a contractual obligation upon the defendant to restore the benefits to the plaintiff." *Id*. (citing *Burlington N. R.R. Co. v. Southwestern Elec. Power Co.*, 925 S.W.2d 92, 96–97 (Tex. App.—Texarkana 1996), affirmed by *Southwestern Elec. Power Co. v. Burlington N. R.R.*, 966 S.W.2d 467 (Tex. 1998). "To recover under an unjust enrichment theory, the benefits to the other party must be actually unjust under the principles of equity." *Argyle Independent School Dist.*, 2007 WL 2285472 at * 12 (citing *Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. App.—Corpus Christi, 2002, pet. denied); *Burlington N. R.R.*, 925 S.W.2d at 97. The Trustee does not seek recovery based on a contract or promissory notes. The Trustee seeks recovery based on benefits received through conduct that may be sufficient to warrant an unjust enrichment finding..

## Conclusion

Based on the forgoing, the Court denies Jiluime's motion to dismiss in part. The Court denies Jiluime's request to dismiss Jiluime, and to dismiss the fraud and conspiracy to commit fraud claims plead against Jiluime. The Court dismisses the Trustee's fraudulent transfer claim plead against Jiluime. The Court denies the Mendez Defendants' motion for judgment on the pleadings. Separate orders will be issued.

Signed at Houston, Texas, on November 30, 2007.

MARVIN ISGUR
United States Bankruptcy Judge